In the Matter of the Estate of JOSEPH W. McGHEE, Deceased.*

Surrogate's Court, Steuben County, July 16, 1932.

*Cole & Cole*, for the administratrix.

*Richard H. Templeton, United States Attorney [Justin C. Morgan, Assistant United States Attorney, of counsel], for the United States.*

*John J. Bennett, Jr., Attorney-General [Charles E. McManus, Assistant Attorney-General, and William F. Huyck, Deputy Assistant Attorney-General, of counsel], for the State of New York.*

WHEELER, S.  The decedent, a veteran of the Civil war, died intestate while a member of the National Military Home for Dis-

* Affd., 239 App. Div. 763; affd., 262 N. Y. 686.

abled Volunteer Soldiers located at Bath, Steuben county, N. Y., leaving no known heirs at law or next of kin. The issue involved in this accounting relates to the disposition of decedent's personal property.

The State of New York, through its Attorney-General, maintains that the personal estate should be paid over to the Treasurer of the State of New York for the benefit of the person or persons who may thereafter appear to be entitled thereto, pursuant to section 272 of the Surrogate's Court Act. On the contrary, the United States contends that the proceeds from the estate should be paid over to the Treasurer of the United States for the sole use and benefit of the post fund of said home, subject to be reclaimed by any legatee or person entitled to take the same by inheritance at any time within five years after death, pursuant to the provisions of section 136 of title 24 of the United States Annotated Code.

It appears that on February 26, 1929, in compliance with chapter 33 of the Laws of 1929, the State of New York made and entered into a lease with the United States by the terms of which the State Soldiers Home at Bath was leased to the United States on condition that the veterans of the Civil war and veterans of the Spanish-American war who were inmates of the home at the time of the transfer should be maintained therein by the lessee subject to the reasonable rules and regulations of the lessee. After the transfer of the home to the Federal government by virtue of the said lease, the decedent on or about May 1, 1929, signed and executed a formal application for entrance into the Federal home, in and by which he agreed among other things as follows: " The said [member] hereby agrees that in the event of his death while a member of the National Military Home for Disabled Volunteer Soldiers, leaving no heirs at law or next of kin, all personal property owned by him at the time of his death including money or choses in action held by him and not disposed of by will, whether such property be the proceeds of pensions or otherwise derived, shall vest in and become the property of said Board of Managers for the sole use and benefit of the post fund of said home, and that all personal property of the said [member] shall upon his death, while a member, at once pass to and vest in said Board of Managers, subject to be reclaimed by any legatee or person entitled to take the same by inheritance at any time within five years after the death of such member."

From the date of said application on until the date of his death the decedent was kept and maintained at the home at the sole expense of the government of the United States. The language

above quoted from the application is substantially the same as contained in an act of Congress known as section 136 of title 24 of the United States Annotated Code, said application being prepared and executed in accordance with the terms and requirements of said statute.

The situation has, therefore, developed a definite conflict of law between the State of New York and the Federal government. Under such circumstances, the courts must follow the specific provisions of the Constitution of the United States, which leave no doubt as to which law shall be supreme.

" This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (Art. VI, § 2.)

However, the State of New York insists with laudable force and ingenuity that the New York State statute and the lease authorized thereunder with the Federal government constitute a contract wherein and whereby the government of the United States undertook for a valuable consideration to maintain these veterans during the term provided in the lease, without restrictions of any kind, except as to the promulgation of reasonable rules and regulations, which, it is urged, do not permit the government to require and insist that these veterans sign a further contract agreeing to turn over to the government their personal estate providing they die without a will and without heirs. It is claimed further that the applications or contracts signed by the veterans as well as the act of Congress requiring the same are contrary to the terms of the lease, and in derogation of the rights of such heirs of veterans as may thereafter appear, as well as the rights of the State itself.

It should be observed that the act of Congress in question was in force at and prior to the date of the lease, and so, therefore, it must be assumed that the contracting parties acted with full knowledge thereof. Certainly neither the lease itself nor the statute attempts to restrict the government as to the terms or the application of the then existing Federal law relating to the requirements for the admission to Federal homes. It would seem also that the Federal law and the veterans' applications thereunder would properly come under the category of reasonable rules and regulations as contemplated by the terms of the lease. Furthermore, it is clear that a contractual relationship arose between the veteran and the home, which obviously is not prohibited by the terms of the lease.

The equities of the situation also are such as tend to sustain and uphold the Federal statute and the applications executed thereunder as reasonable rules or regulations in connection with the maintenance of the veterans at the home, for the reason that the personal estates are almost without exception made up of pension moneys paid over a period of time to the veterans by the Federal government, while they were being maintained and cared for by that government. Likewise the propriety of the Federal act as a proper rule or regulation is accentuated by the provisions that such funds are for the sole use and benefit of the post fund of the home, thereby adding to the comfort and well-being of the veterans.

For the reasons herein stated the net proceeds of decedent's estate should be paid to the Treasurer of the United States.

Enter decree accordingly.